[No. A075729. First Dist., Div. Five. Oct. 30, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
JOEL RUELAS AGUILAR, Defendant and Appellant.

**COUNSEL**

Linda Buchser, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JONES, J.**—Joel Ruelas Aguilar appeals his conviction for the crime of torture (Pen. Code, § 206).[1] He challenges the constitutionality of section 206 on the grounds of vagueness and contends the trial court erred when it refused to instruct the jury that the crime of torture under section 206 requires the willful, deliberate, and premeditated intent to inflict prolonged pain. We join the Third and Fifth Appellate Districts in rejecting both arguments.

Appellant also argues the trial court's instruction defining "reasonable doubt" lessened the prosecution's burden of proof, thereby violating his right to due process. We hold that the "reasonable doubt" instruction at issue comports with constitutional due process requirements, and publish our opinion to dispel any uncertainty regarding the court's position on this issue.

Accordingly, we will affirm the trial court's judgment.

---

[1]All further statutory references are to the Penal Code except where otherwise indicated.

## BACKGROUND

As appellant does not attack the sufficiency of the evidence supporting his conviction, we need not discuss the underlying facts in detail. On May 14, 1996, the Marin County District Attorney filed an amended information charging appellant with a number of offenses, including one count of torture under section 206.[2] The alleged victim was appellant's two-month-old daughter, Claudia Ruelas. Appellant pleaded not guilty to the charge.

A jury trial was held and, on June 11, 1996, the jury found appellant guilty as charged.[3] On September 9, 1996, the trial court sentenced appellant to a term in state prison. Appellant timely appeals his conviction.

## DISCUSSION

### I. *Section 206 Is Not Unconstitutionally Vague*

"The fundamental policy behind the constitutional prohibition of vaguely worded criminal statutes was stated in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, at page 453 [83 L.Ed. 888, at page 890, 59 S.Ct. 618]: 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' " (*People* v. *Superior Court (Engert)* (1982) 31 Cal.3d 797, 801 [183 Cal.Rptr. 800, 647 P.2d 76].) Under the California state and the federal Constitutions, ". . . due process of law in this context requires two elements: a criminal statute must ' "be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." ' [Citations.]" (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 567 [20 Cal.Rptr.2d 341, 853 P.2d 507].) "The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Id.* at p. 568.)

Section 206 defines the crime of torture as follows: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose

---

[2]Appellant was also charged with aggravated mayhem (§ 205), mayhem (§ 203), two counts of felony child endangerment (§ 273a, subd. (a)), misdemeanor cruelty to a child (§ 273a, subd. (b)), and spousal battery (§ 273.5, subd. (a)). One of the counts of felony child endangerment included an allegation of infliction of great bodily injury (§ 12022.7).

[3]The jury also found appellant guilty on all the other charges except for the charge of aggravated mayhem, and found the great bodily injury allegation to be true.

of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain."[4] Appellant specifically attacks as vague the terms "cruel or extreme pain and suffering," "any sadistic purpose," and "torture."

## A. *"Cruel or Extreme Pain and Suffering"*

■ Appellant contends the phrase "cruel or extreme pain and suffering" in section 206 is vague because "no one knows what 'cruel pain' is." Appellant cites the case of *People v. Superior Court (Engert), supra,* 31 Cal.3d 797 as support for this contention. In *Engert,* two defendants charged with first degree murder successfully challenged special circumstance allegations that the murders were " 'especially heinous, atrocious, and cruel, manifesting exceptional depravity as described in . . . section 190.2(a)(14).' " (*People v. Superior Court (Engert), supra,* 31 Cal.3d at p. 800.) The issue before the California Supreme Court (the Supreme Court) was whether the trial court properly struck the allegations from the information on the ground section 190.2, subdivision (a)(14) was unconstitutionally vague.[5] (*People v. Superior Court (Engert), supra,* 31 Cal.3d at pp. 800-801.) The Supreme Court affirmed the trial court's order, stating: "It is difficult to assign any specific content to the pejoratives contained in subdivision (a)(14). Webster's New International Dictionary (2d ed.) defines heinous as '[hateful]; hatefully bad; flagrant; odious; atrocious; giving great offense.' Atrocious is defined as '[savagely] brutal; outrageously cruel or wicked. . . .' Cruel is defined as '[d]isposed to give pain to others; willing or pleased to hurt or afflict; savage, inhuman, merciless.' Depravity is defined as 'corruption; wickedness.' The terms address the emotions and subjective, idiosyncratic values. While they stimulate feelings of repugnance, they have no directive content. The adverb 'especially' adds nothing except greater uncertainty. The term 'especial' is defined by Webster as '[n]ot general; distinguished among others of the same class as exceptional in degree.' [¶] None of these terms meets the standards of precision and certainty required of statutes which render persons eligible for punishment, either as elements

---

[4]Section 206 was enacted pursuant to Proposition 115, the "Crime Victims Justice Reform Act," which was adopted on June 5, 1990. (See *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1559 [18 Cal.Rptr.2d 395].)

[5]Section 190.2, subdivision (a)(14) provides: "The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true: . . . [¶] . . . [¶](14) The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity. As used in this section, the phrase 'especially heinous, atrocious, or cruel, manifesting exceptional depravity' means a conscienceless or pitiless crime that is unnecessarily torturous to the victim."

of a charged crime or as a charged special circumstance. . . ." (*People* v. *Superior Court (Engert)*, *supra*, 31 Cal.3d at pp. 801-802.)

We believe *Engert* is inapposite in this case. In *Engert*, the terms found to be unconstitutionally vague, including the word "cruel," were used in and of themselves to define a standard of conduct. Used in that manner, those terms, as the Supreme Court stated, had "no directive content." That is not the case here.

In section 206, the word "cruel" modifies the phrase "pain and suffering." In at least two other cases, courts have held that "cruel pain" is the equivalent to "extreme" or "severe" pain. (*People* v. *James* (1987) 196 Cal.App.3d 272, 297 [241 Cal.Rptr. 691]; *People* v. *Talamantez* (1985) 169 Cal.App.3d 443, 457 [215 Cal.Rptr. 542].)[6] This definition comports with the common dictionary definition of "cruel" (see Webster's New Internat. Dict. (3d ed. 1965) p. 546 [as an adjective, "cruel" means "extreme" or "severe"]), and, in our view, is a reasonable and practical interpretation of that phrase (*Williams* v. *Garcetti*, *supra*, 5 Cal.4th at p. 568). We therefore conclude that the phrase "cruel or extreme pain and suffering," as used in section 206, is not unconstitutionally vague.

### B. "Any Sadistic Purpose"

■ Appellant also contends the phrase "any sadistic purpose" in section 206 is vague because although it has a settled meaning, that meaning is not commonly known. Appellant's position on this issue is based on *People* v. *Raley* (1992) 2 Cal.4th 870 [8 Cal.Rptr.2d 678, 830 P.2d 712] (*Raley*). He contends that in *Raley* the Supreme Court defined the phrase "sadistic purpose" to include an element of sexual gratification. Appellant contends the trial court gave the jury the standard torture instruction which does not define the term "sadistic purpose," and that when the jury requested a

---

[6]In *People* v. *Talamantez*, *supra*, 169 Cal.App.3d 443, the defendant, citing *People* v. *Superior Court (Engert)*, *supra*, 31 Cal.3d 797, contended the crime of murder by torture, as defined by the trial court in its jury instructions, was unconstitutionally vague because part of the definition included the phrase "cruel pain." (*People* v. *Talamantez*, *supra*, 169 Cal.App.3d at p. 456.) The court in *Talamantez* disagreed that the word "cruel" was vague, reading the *Engert* opinion as focusing on the word "especially" as it modified "heinous," "atrocious," and "cruel." (*People* v. *Talamantez*, *supra*, 169 Cal.App.3d at p. 457.) As we read *Engert*, however, we conclude the court in that case was at least equally concerned with the meaning of "heinous," atrocious," and "cruel." (See *People* v. *Superior Court (Engert)*, *supra*, 31 Cal.3d at pp. 801-802.)

definition of the term, the court failed to include the element of sexual gratification, thereby misleading the jury.[7]

In *Raley, supra,* 2 Cal.4th 870, the Supreme Court addressed the issue of whether the phrase "sadistic purpose," as used in jury instructions defining the crime of murder by torture and the torture-murder special circumstance, was so vague as to violate the state and federal constitutional guarantees against cruel and unusual punishment. (*Id.* at p. 899.) In holding that the phrase was not unconstitutionally vague, the Supreme Court indeed recognized that the word "sadism" has a strong sexual connotation. (*Id.* at pp. 899-900.)

Later in its opinion, however, the Supreme Court stated that "sadistic purpose" "is a term in common usage, having a relatively precise meaning, that is, the infliction of pain on another person for the purpose of experiencing pleasure." (*Raley, supra,* 2 Cal.4th at p. 901.) We find it significant that the Supreme Court's statement does not include a specific reference to sexual pleasure. We also find significant the Supreme Court's notation of a recent definition of "sadism" in Black's Law Dictionary (6th ed. 1990) page 1336, column 1: "A form of satisfaction, commonly sexual, derived from inflicting harm on another." (*Raley, supra,* 2 Cal.4th at p. 901, fn. 4.) In our view, the Supreme Court in *Raley* clearly recognized that a "sadistic purpose" need not be sexual in nature, and therefore did not so limit the meaning of "sadistic purpose." (See also *People* v. *Healy* (1993) 14 Cal.App.4th 1137, 1141-1142 [18 Cal.Rptr.2d 274].)

We also conclude that the common meaning of "sadistic purpose," "the infliction of pain on another person for the purpose of experiencing pleasure" (*Raley, supra,* 2 Cal.4th at p. 901), is sufficiently definite to provide " ' "a standard of conduct for those whose activities are proscribed and . . . a standard for police enforcement and for ascertainment of guilt." ' " (*Williams* v. *Garcetti, supra,* 5 Cal.4th at p. 567, citations omitted.) As the Supreme Court in *Raley* recognized, the courts of this state have consistently

---

[7]The trial court read the jury CALJIC No. 9.90 as follows: "Defendant is accused in Count One of the amended information of having committed the crime of torture, a violation of Penal Code Section 206. . . . [¶] Every person who with the intent to cause cruel or extreme pain and suffering for any sadistic purpose inflicts great bodily injury upon the person of another is guilty of the crime of torture in violation of Section 206 of the Penal Code. [¶] Great bodily injury means a significant or substantial physical injury. In order to prove such crime, each of the following elements must be proved: [¶] One, a person inflicted great bodily injury upon the person of another; and two, the person inflicting the injury did so with the specific intent to cause cruel or extreme pain and suffering for any sadistic purpose." In response to the jury's request for a definition of "sadistic purpose," the court instructed: "sadistic purpose means the infliction of pain on another person for the purpose of experiencing pleasure."

used the term "sadistic purpose" without requiring further definition. (See *Raley, supra,* 2 Cal.4th at pp. 900-901, and cases cited therein; *People* v. *Barrera, supra,* 14 Cal.App.4th at p. 1564.) The term "sadistic purpose" is not unconstitutionally vague.

### C. *"Torture"*

■ Appellant contends the term "torture" in section 206 is vague because the statute does not include as an element the intent to inflict extreme and prolonged pain. He contends the intent to inflict extreme and prolonged pain is part of the commonsense definition of torture and has been read into the definition of murder by torture (§ 189) by the courts, and, therefore, that it should also be an element of torture under section 206. Since section 206 expressly requires an intent to inflict extreme pain or suffering, we understand appellant to be arguing that there must also be an intent to inflict *prolonged* pain.

We disagree with appellant that the "commonsense" definition of torture requires an intent to inflict prolonged pain. The dictionary definition of "torture" does not indicate that the pain inflicted must be prolonged. (See Webster's New Internat. Dict., *supra,* p. 2414; Webster's New Collegiate Dict. (1979) p. 1224.) In addition, although the courts have included the intent to inflict extreme and prolonged pain as an element of murder by torture as a matter of judicial construction (see *People* v. *Steger* (1976) 16 Cal.3d 539, 546 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206]), this development was necessary because section 189 does not itself define the crime of murder by torture. Here, virtually the entire text of section 206 defines the crime of torture, and the statutory language does not require the intent to inflict prolonged pain. (See pt. II, *post.*)

Appellant's reliance on *People* v. *Leach* (1985) 41 Cal.3d 92 [221 Cal.Rptr. 826, 710 P.2d 893] is misplaced. *Leach* involved application of the torture-murder special circumstance the electorate passed by initiative in 1978. (*Id.* at p. 109; § 190.2, subd. (a)(18).) As originally enacted, section 190.2, subdivision (a)(18) provided that ". . . torture requires proof of the infliction of extreme physical pain no matter how long its duration." (See *People* v. *Leach, supra,* 41 Cal.3d at p. 109.)[8] Section 190.2, subdivision (a)(18) thus purported to eliminate the former requirement of " 'proof of an intent to inflict extreme and prolonged pain.' " (*People* v. *Leach, supra,* 41 Cal.3d at p. 109, citing former § 190.2, subd. (c)(4).)

In *People* v. *Leach, supra,* 41 Cal.3d 92, the Supreme Court's concern was that section 190.2, subdivision (a)(18) eliminated completely the requirement of *intent* to torture. The Supreme Court stated: "We agree that the

---

[8]Section 190.2, subdivision (a)(18) has since been amended to delete the quoted language.

electorate which enacted subdivision (a)(18) intended to incorporate as much of the established judicial meaning of torture as is not inconsistent with the specific language of the initiative. Thus, the torture-murder special circumstance 'requires proof of first degree murder, [citation], proof the defendant intended to kill and to torture the victim [citation], and the infliction of an extremely painful act upon a living victim.' " (*People* v. *Leach, supra,* 41 Cal.3d at p. 110.)

Significantly, the Supreme Court did not mention any requirement that the pain inflicted be prolonged. The case cited by the Supreme Court as supporting authority, *People* v. *Davenport* (1985) 41 Cal.3d 247 [221 Cal.Rptr. 794, 710 P.2d 861], likewise focused generally on the element of intent to torture and not on the duration of the pain inflicted. (*Id.* at pp. 270-271.) And in neither of the other cases cited by appellant, *People* v. *Steger, supra,* 16 Cal.3d 539, and *People* v. *Wiley* (1976) 18 Cal.3d 162 [133 Cal.Rptr. 135, 554 P.2d 881], is the duration of the pain inflicted an issue.

Thus, in our view, intent to inflict *prolonged* pain is not an element of the crime of torture under section 206. Moreover, since section 206 expressly defines the crime of torture as requiring the intent to inflict extreme pain, it is consistent with pertinent case law. (See *People* v. *Leach, supra,* 41 Cal.3d at pp. 109-110; *People* v. *Davenport, supra,* 41 Cal.3d at pp. 270-271.) We therefore conclude that the term "torture," as used in section 206, is not unconstitutionally vague.

II.   *"Willful, Deliberate, and Premeditated Intent to Inflict Prolonged Pain" Is Not an Element of the Crime of Torture as Defined in Section 206*

■   Appellant contends the trial court committed reversible error by failing to instruct the jury that the crime of torture requires the willful, deliberate, and premeditated intent to inflict prolonged pain. Again, we disagree.

We have already concluded that section 206 does not require that the pain inflicted be prolonged. (See pt. I.C., *ante.*) This conclusion accords with the holdings of the two other cases that have dealt with that question. (See *People* v. *Vital* (1996) 45 Cal.App.4th 441, 444 [52 Cal.Rptr.2d 676] ["Whatever the requirements for torture murder under section 189 might be, section 206 plainly sets forth its requirements for torture. The intent to cause prolonged pain is not one of them."]; *People* v. *Barrera, supra,* 14 Cal.App.4th at pp. 1563-1564.)

Thus, the issue here is whether the intent to inflict pain, which is part of the statutory definition of the crime of torture (see § 206), must be "willful,

deliberate, and premeditated." Appellant contends such intent should be required under section 206 based on past judicial interpretations of the murder-by-torture statute (§ 189) and the torture-murder special circumstance (§ 190.2, subd. (a)(18)).

In *People* v. *Steger, supra,* 16 Cal.3d 539, the Supreme Court held that "murder by means of torture under section 189 is murder committed with a wilful, deliberate, and premeditated intent to inflict extreme and prolonged pain." (*Id.* at p. 546.) The Supreme Court's holding was based in significant part on the fact that the Legislature defined murder by torture as a kind of first degree murder. Relying on prior judicial opinions on murder by torture, the Supreme Court stated: "In labeling torture as a 'kind' of premeditated killing, the Legislature requires the same proof of deliberation and premeditation for first degree torture murder that it does for other types of first degree murder. [¶] The element of calculated deliberation is required for a torture murder conviction for the same reasons that it is required for most other kinds of first degree murder. It is not the amount of pain inflicted which distinguishes a torturer from another murderer, as most killings involve significant pain. [Citation.] Rather, it is the state of mind of the torturer—the cold-blooded intent to inflict pain for personal gain or satisfaction—which society condemns." (*Ibid.,* fn. omitted.) Keeping in mind that *Steger* involved the crime of first degree murder by torture and that section 189 does not define that crime, we do not dispute the logic underlying the Supreme Court's holding in that case.

Unfortunately for appellant, *Steger* does not support his position in this case. As appellant acknowledges in his opening brief, the plain language of section 206 does not require willful, deliberate, and premeditated intent. (See § 206.) This is a critical point of distinction between section 206 and section 189, which *expressly* requires such intent for murder by torture because it is a kind of first degree murder. (See § 189; *People* v. *Steger, supra,* 16 Cal.3d at p. 546.) Thus, we are not bound to construe the intent requirement under section 206 identically to section 189. In the words of another court that has already rejected the argument made by appellant here, "[w]e must presume that had premeditation been intended to be an element of the crime of torture under section 206, the section would have said so." (*People* v. *Vital, supra,* 45 Cal.App.4th at p. 444.)

The trial court read the jury CALJIC No. 9.90 to define the elements of the crime of torture. (See p. 1203, fn. 7, *ante.*) We conclude that CALJIC No. 9.90 correctly sets forth the elements of the crime of torture, and, therefore, that the trial court was not required further to instruct the jury that the crime requires willful, deliberate, and premeditated intent to torture.

III. *The Trial Court's Instruction Defining "Reasonable Doubt" Did Not Violate Appellant's Right to Due Process*

■ Finally, appellant contends the trial court's jury instruction defining "reasonable doubt" in the form of the 1994 revised version of CALJIC No. 2.90 lessened the prosecution's burden of proof, thereby violating appellant's right to due process. We note first that appellant requested the instruction given. Nevertheless, we review this contention de novo, and reject it on the merits.

The 1994 revised version of CALJIC No. 2.90 provides: "Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

Before its revision in 1994, CALJIC No. 2.90 provided: "Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, *and depending upon moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge." (Italics added.) In 1994, the United States Supreme Court (the Court) rejected a constitutional challenge to CALJIC No. 2.90 that objected to the phrases "moral evidence" and "moral certainty." (*Victor* v. *Nebraska* (1994) 511 U.S. 1, 10-17 [114 S.Ct. 1239, 1245-1249, 127 L.Ed.2d 583].) The Court, however, did not condone the use of the phrase "moral certainty." Although the phrase still met the constitutional standard for defining "reasonable doubt," its common meaning had changed since it was first used in a reasonable doubt instruction and could continue to change to the point of being unconstitutional. (*Id.* at pp. 16-17 [114 S.Ct. at pp. 1248-1249].) The Court stated: "An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof." (*Id.* at pp. 14-15 [114 S.Ct. at p. 1247], citing *Hopt* v. *Utah* (1887) 120 U.S. 430, 439 [7 S.Ct. 614, 618, 30 L.Ed. 708].)

In *People* v. *Freeman* (1994) 8 Cal.4th 450 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888], the Supreme Court responded to this criticism of the phrases "moral evidence" and "moral certainty" by stating: "Although modifying the standard instruction is perilous, and generally should not be done,

today it might be more perilous for trial courts *not* to modify it in a narrow and specific manner in light of the high court's statement that the instruction's 'common meaning . . . may continue to [change] to the point that it' becomes unconstitutional. [Citation.] A slight modification in view of that decision might be deemed safe, indeed safer than not making it. The high court made clear that the terms 'moral evidence' and 'moral certainty' add nothing to the jury's understanding of reasonable doubt. It thus seems that trial courts might, in the future, safely delete the following phrases in the standard instruction: 'and depending on moral evidence,' and 'to a moral certainty.' " (*Id.* at p. 504, original italics.) CALJIC No. 2.90 was thereafter revised as suggested by the Supreme Court in *Freeman*. (See *People* v. *Freeman, supra*, 8 Cal.4th at p. 504; *People* v. *Light* (1996) 44 Cal.App.4th 879, 888 [52 Cal.Rptr.2d 218].) Furthermore, the Legislature amended section 1096, effective July 3, 1995, to define "reasonable doubt" in language identical to the language of revised CALJIC No. 2.90. (See § 1096.)

Appellant contends the revised version of CALJIC No. 2.90 defines reasonable doubt only in terms of an "abiding conviction" and leaves the jury without guidance as to the level of persuasion the prosecution must attain to satisfy its burden of proof beyond a reasonable doubt. He contends the instruction thus permitted the jury to convict him upon a lesser standard than due process requires.

Constitutional challenges to the revised version of CALJIC No. 2.90, challenges identical to the one raised by appellant in this case, have been repeatedly rejected by the Courts of Appeal. (See *People* v. *Barillas* (1996) 49 Cal.App.4th 1012, 1022 [57 Cal.Rptr.2d 166] [Second District]; *People* v. *Carroll* (1996) 47 Cal.App.4th 892, 895-896 [54 Cal.Rptr.2d 868] [Fourth District]; *People* v. *Hurtado* (1996) 47 Cal.App.4th 805, 815-816 [54 Cal.Rptr.2d 853] [Sixth District]; *People* v. *Tran* (1996) 47 Cal.App.4th 253, 262-263 [54 Cal.Rptr.2d 650] [Sixth District]; *People* v. *Light, supra*, 44 Cal.App.4th at pp. 884-889 [Fifth District]; *People* v. *Torres* (1996) 43 Cal.App.4th 1073, 1077-1078 [51 Cal.Rptr.2d 77] [Second District].) Although no First Appellate District case is among the cited cases, this court has rejected its share of challenges to revised CALJIC No. 2.90 in unpublished decisions. We likewise reject appellant's challenge in this case, and publish our decision to make clear this court's position on this issue.

We hold that the trial court did not violate appellant's right to due process by giving the jury CALJIC No. 2.90 as revised. In so holding, we find pertinent the comments of the court in *People* v. *Hurtado, supra*, 47 Cal.App.4th 805: "In *Freeman*, our Supreme Court took great care in suggesting changes to CALJIC No. 2.90 that would shore up its constitutionality, and concluded that these changes, while not required, were 'permissible.' [Citation.] We presume the [C]ourt's suggestions were not inadvertent or ill considered. (See *In re Brittany M.* (1993) 19 Cal.App.4th 1396,

1403 [24 Cal.Rptr.2d 57].) If there is to be any retreat from *Freeman*, it should come from the California Supreme Court, not us. We conclude, based on the pronouncements in *Freeman*, that the instruction given here satisfies federal due process concerns." (*People* v. *Hurtado*, *supra*, 47 Cal.App.4th at p. 816.)

We specifically reject appellant's characterizing as dicta the United States Supreme Court's comment in *Victor* that "[a]n instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof." (See *Victor* v. *Nebraska*, *supra*, 511 U.S. at pp. 14-15 [114 S.Ct. at p. 1247].) The California Supreme Court in *Freeman* obviously thought otherwise. (See *People* v. *Freeman*, *supra*, 8 Cal.4th at p. 504 ["The high court made clear that the terms 'moral evidence' and 'moral certainty' add nothing to the jury's understanding of reasonable doubt."]; see also *People* v. *Light*, *supra*, 44 Cal.App.4th at pp. 888-889.) Moreover, even if the California Supreme Court's comments are themselves dicta, they are nonetheless highly persuasive. (*Evans* v. *City of Bakersfield* (1994) 22 Cal.App.4th 321, 328 [27 Cal.Rptr.2d 406].)

### DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 1998.